**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**ROBERT MOORE, on behalf of himself and**
**Other entities and persons similarly situated**                     **PLAINTIFFS**

**V.**                                 **4:19CV00556 JM**

**CITY OF LITTLE ROCK;**
**GREG MASSANELLI, Individually and in his Official**
**Capacity as Operations Supervisor of Little Rock's**
**Code Enforcement Division;**
**EDWARD GARLAND, Individually and in his**
**Official Capacity as Division Manager of Little Rock's**
**Code Enforcement Division; and**
**MORRIS GARLAND, Individually and in his Official**
**Capacity as Code**
**Enforcement Officer**                                 **DEFENDANTS**

## ORDER

Pending are cross-motions for summary judgment. The motions have been fully briefed and are ripe for consideration.

Plaintiff Robert Moore, on behalf of himself and others similarly situated, challenges the constitutionality of Article IX of the City of Little Rock's Code of Ordinances (the "Rental Inspection Code" or "RIC"). The provisions of the Rental Inspection Code apply to all rental housing units in Little Rock, including houses, apartments, manufactured homes, and mobile homes. Under the RIC, it is unlawful for an owner to rent any housing unit without a certificate of compliance for each unit. Plaintiff contends that to obtain a certificate of compliance a property owner must pay for a business license and preemptively agree to unlawful searches. Plaintiff alleges that the RIC violates his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments to the United States and Arkansas Constitutions. Plaintiff also alleges

that the Defendants retaliated, interfered, coerced, and intimidated him in violation of Arkansas Code Section 16-123-108.[1]

### I.  Facts

1.     The City of Little Rock, Arkansas (the "City") adopted a Rental Inspection Program ("the RIC") in May of 2017. (Joint Statement of Undisputed Material Facts, ECF No. 47 at p. 11-26).

2.     The RIC was adopted for the protection of life and property within the City. *Id.* at p. 11-45.

3.     The RIC applies to all rental housing units located within the City except for public housing and dwellings owned by the housing authority. *Id.* at p. 11-26.

4.     The RIC requires rental units meet and be maintained at the minimum safety standards identified in the Little Rock Municipal Code. *Id.*

5.     The RIC contains both definitional and procedural sections for enforcement, landowners, and tenants. *Id.*

6.     The RIC incorporates the "Housing Code" provisions of the Little Rock Municipal Code. *Id.*

7.     Plaintiff bought the house located at 1518 South Taylor St., Little Rock, AR 72204 on or about July 21, 2009. *Id.* at p. 48-49.

8.     Plaintiff periodically rented the house located at 1518 South Taylor St, Little Rock, AR 72204 during the time he owned it.

9.      In October of 2015, Plaintiff received a phone call from Little Rock Police Officer Ron Croson. Plaintiff understood Officer Croson to threaten him with condemnation of his house

---

[1] In the Second Amended Complaint (the "Complaint"), Plaintiff alleged that he suffered inverse condemnation when he sold his property.  Plaintiff has abandoned this claim. (Pl.'s Resp. to Def.'s Mot. for Sum. J, ECF No. 38 at ¶6).

located at 1518 South Taylor, Little Rock, AR 72204 if he did not evict his tenants living at that residence. *Id.* at p. 123.

10.     In December 2015, Plaintiff received a letter in the mail from the City requesting to search his property located at 1518 S. Taylor, Little Rock, AR 72204, and a letter requesting Plaintiff obtain a certificate of compliance pursuant to the RIC for his house located at 1518 S. Taylor, Little Rock, AR 72204. *Id.* at p. 50-51, 123.

11.     Plaintiff had a signed lease with his tenants at the time. *Id.* at p. 123.

12.     Plaintiff believed that Defendants were requiring him to give consent to a search or succumb to a search warrant regarding a search of the house located at 1518 S. Taylor, Little Rock, AR 72204. *Id.*

13.     To obtain a certificate of compliance, Plaintiff had to consent to searches of his property. (Little Rock, Ark., Code §§ 8-579(a) and 8-579(b), ECF No. 47 at p. 13-14).

14.     Plaintiff was presented with the choice between agreeing to a search and being denied a certificate of compliance. *Id.*

15.     Plaintiff, along with his attorney, had a meeting with Defendants Greg Massanelli, Ed Garland, and Morris Hunter with the City's Code Enforcement Division in December 2015. *Id.* at p. 123.

16.     At that meeting, Plaintiff and his attorney argued the Rental Inspection Code was unconstitutional and violated Plaintiff's civil rights. *Id.* at p. 124.

17.     Plaintiff refused the search because he owned the house but did not occupy the house. The tenant in the house refused the search, too. *Id.*

18.     On January 19, 2016, Morris Hunter swore out an affidavit to a neutral magistrate for a search warrant to search Plaintiff's house located at 1518 S. Taylor, Little Rock, AR 72204. *Id.* at p. 50-51.

19.     The affidavit of Morris Hunter specifically stated that the basis of the affidavit was the Rental Inspection Code. *Id.*

20.     On January 19, 2016, a search warrant was granted by a neutral magistrate for the inspection of Plaintiffs' rental property. *Id.* at p. 52-54.

21.     On January 21, 2016, Plaintiff was cited for "failure to comply with rental registration" a violation of Section 17-38 of the Housing Code. *Id.* at p. 55-64.

22.     Plaintiff pled "not guilty" on February 3, 2016. *Id.* at p. 55-59, 125.

23.     Plaintiff moved to vacate the search warrant and moved the District Court for a temporary restraining order and preliminary injunction to prevent Defendants from searching his property. *Id*. at p. 65-78, 125.

24.     In the motion, Plaintiff challenged the constitutionality of the Rental Inspection Code. *Id.*

25.     The district court ruled that the motion had no merit because the charges before the court were "not relevant to the Rental Inspection Program." *Id.* at p. 58.

26.     Because Plaintiff had a valid business license in the City of Little Rock for the creation of t-shirts, the District Court found him "not guilty" of violating Section 17-38. *Id.* at p. 56-59, 125.

27.     On October 26, 2016, Defendants performed a search of Plaintiff's property located at 3710 Boyd Street, Little Rock, AR 72204. *Id.* at p. 83-84.

28.     Defendants did not submit an affidavit or obtain a warrant before performing the search of Plaintiff's property located at 3710 Boyd Street, Little Rock, AR 72204. *Id.* at p. 126.

29.     On October 26, 2016, Defendants gained access to Plaintiff's property located at 3710

Boyd Street, Little Rock, AR 72204 from the holdover tenants at that property. *Id.*

30.    On October 26, 2016, Defendants performed a search of Plaintiff's property located at 3710 1/2 Boyd Street, Little Rock, AR 72204. *Id.* at p. 79-80.

31.    Defendants did not submit an affidavit and did not obtain a warrant before performing the search of Plaintiff's property located at 3710 1/2 Boyd Street, Little Rock, AR 72204. *Id.* at 127.

32.    On October 26, 2016, Defendants gained access to Plaintiff's property located at 3710 1/2 Boyd Street, Little Rock, AR 72204 from the holdover tenants at that property. *Id.* at p. 127.

33.    Defendants mailed Plaintiff a letter listing repairs that Plaintiff was required to make to his rental units on Boyd Street under the Housing Code. *Id.* at p. 79-86.

34.    Plaintiff expended money to make the repairs necessary to comply with the Housing Code. *Id.* at p. 128.

## II.    Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*,

444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*, '[to] point[] out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

"Courts take a 'slightly modified' approach when, as here, multiple parties have moved for summary judgment." *State Farm Life Ins. Co. v. Youngs*, 2022 WL 1017813, at *2 (D. Minn. Apr. 5, 2022) (citing *Fjelstad v. State Farm Ins. Co*., 845 F. Supp. 2d 981, 984 (D. Minn. 2012)). The record must be viewed in the light most favorable to the Defendants in resolving Plaintiff's motion, the record is viewed in the light most favorable to Plaintiff in resolving Defendants' motion.

### III.    Discussion of the Law

### A. Fourth Amendment Unreasonable Searches and Seizures

Plaintiff alleges that the RIC violates his constitutional rights and the rights of class members to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments. Plaintiff contends that the RIC violates the Fourth Amendment on its face because

6

it authorizes a warrantless search of a rental housing unit. Specifically, Plaintiff alleges that Section 8-583 of the RIC gives the City probable cause to search a rental unit without a warrant at any time without notice to the owner or tenant of the property. Section 8-583 states, in relevant part:

> It shall be the responsibility of the owner, tenant or agent in charge of the unit to provide access to the building official into all areas subject to inspection under this article pursuant to section 8-355, section 8-357 and section 20-75. The building official may obtain an administrative search warrant in order to gain access to the rental housing unit. The legislative finding that rental housing units should be inspected to ensure compliance with the applicable housing code . . . for the health, safety and welfare of the occupants shall be deemed to be probable cause for the issuance of the warrant.

Little Rock, Ark., Code § 8-583(a) (2017). Plaintiff argues that this language authorizes a building official to perform unlawful searches and seizures in violation of the owner's Fourth Amendment rights.[2]

The United States Constitution provides that federal courts may exercise jurisdiction only over an actual "case or controversy." U.S. Const. art. III, § 2. A federal court's Article III jurisdiction can only be invoked when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action . . ..' *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S. Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). "This is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975). The Supreme Court has identified three elements necessary to establish standing. First, a plaintiff must have sustained: (1) a concrete and particularized injury, actual or imminent, (2) traceable to the challenged action of the defendant, and (3) a likelihood that a favorable outcome would redress the harm. *Lujan v. Defs. of Wildlife*,

---

[2] Plaintiff also states that section 8-583 subjects tenants of rental units to unconstitutional searches. However, Plaintiff is not a tenant and does not have standing to invoke the rights of tenants.

504 U.S. 555, 560–61 (1992). The party invoking federal jurisdiction bears the burden of establishing these elements. *Id.*

The Court finds that Plaintiff lacks standing to pursue his Fourth Amendment claims because he has not suffered a concrete and particularized injury. It is undisputed that Defendants did not search Plaintiff's Taylor Street rental unit even after obtaining a search warrant, and Defendants searched Plaintiff's Boyd Street rental units with consent of the holdover[3] tenants. Plaintiff was not cited for his failure to consent to the Defendants' inspection and there is no potential criminal liability for failure to consent.[4]

Plaintiff contends that he suffered injury by having to pay for repairs located during an unconstitutional search under the RIC. However, the repairs Plaintiff was required to make under the RIC were not due to a violation of his Fourth Amendment right. Plaintiff's Boyd Street properties were inspected with consent. The inspections were, therefore, constitutional. The Defendants required Plaintiff to make repairs to his properties based upon health and safety violations. There was no injury caused by an unconstitutional search. *See also Rozman v. City of Columbia Heights,* 268 F.3d 588, 593 (8th Cir. 2001) (The court found that repairs made by plaintiff as a result of a health and safety inspection did not give rise to a constitutional violation even if the reason for the required repairs was unfounded. "[M]isinterpretation or misapplication of the City Code does not give rise to a federal substantive due process claim.").

The Court further finds that the Plaintiff did not have a reasonable expectation of privacy in his rental properties that were inhabited by tenants. Therefore, Plaintiff does not have a Fourth

---

[3] Plaintiff repeatedly refers to the tenants at the Boyd Street properties as holdover tenants, but Plaintiff has not cited the Court to authority stating that their status as holdover tenants restricts their ability to consent to the search.
[4] Section 8-579 states that noncompliance with the RIC may result in nuisance abatement procedures and references Section 1-9 of the Little Rock Code. Section 1-9 provides for fines unless the violation of the Code is a misdemeanor under state law. Little Rock, Ark., Code § 1-9. The RIC does not classify violations as misdemeanors. Therefore, violations of the RIC are only subject to nuisance abatement procedures and/or fines.

Amendment right to oppose the RIC under the circumstances presented here. Although the Eighth Circuit has not ruled on the precise issue presented in this case, the Court has found that an owner or landlord does not have a reasonable expectation of privacy in the "common areas" of his rental buildings "because he did not maintain a subjective expectation of privacy regarding information in the areas, nor would any such expectation have been objectively reasonable." *Azam v. City of Columbia Heights*, 865 F.3d 980, 990 (8th Cir. 2017). The same reasoning is more appropriate here where the rental units have no common areas.

Even if Plaintiff had standing to pursue his Fourth Amendment claim, the RIC does not violate Plaintiff's Fourth Amendment rights.[5] The RIC does not authorize warrantless inspections of properties if consent to the inspection is withheld. Plaintiff takes issue with a portion of Section 8-583 of the RIC which states: "The legislative finding that rental housing units should be inspected to ensure compliance with the applicable housing code . . . for the health, safety and welfare of the occupants shall be deemed to be probable cause for the issuance of the warrant." Little Rock, Ark., Code § 8-583(a) (2017). Plaintiff maintains that this sentence preemptively gives Defendants probable cause to search any rental housing unit at any time.

First, to determine the constitutionality of ordinances, this Court follows the state court's interpretation, or if unavailable, uses that state court's rules of construction. *Metropolitan Omaha Prop. Owners Ass'n, Inc. v. City of Omaha*, 991 F.3d 880, 884 (8th Cir. 2021) (citing *A.W. ex rel. Doe v. Nebraska*, 865 F.3d 1014, 1017 (8th Cir. 2017)). Arkansas courts have not interpreted the sections of the RIC at issue here. Therefore, the Court must apply the Arkansas Supreme Court's rules of construction.

---

[5] "Article 2, § 15, of the Arkansas Constitution is virtually identical to the Fourth Amendment, and we interpret it in the same manner as the United States Supreme Court interprets the Fourth Amendment." *Rainey v. Hartness*, 5 S.W.3d 410, 415 (Ark. 1999). As a result, the Court determines that the analysis of Plaintiff's federal constitutional claims under § 1983 is equally applicable to the state constitutional claims under the ACRA.

Arkansas courts apply the same statutory construction rules to ordinances as they do to statutes. *Hole in the Wall NWA, LLC v. City of Bella Vista*, 609 S.W.3d 8, 13 (Ark. App. 2020) (citing *Mountain Pure, LLC v. Little Rock Wastewater Util.*, 383 S.W.3d 347 (Ark. 2011); *Stricklin v. Hays*, 965 S.W.2d 103 (Ark. 1998).

> The basic rule of statutory construction is to give effect to the intent of the legislature. When the language of a statute is plain and unambiguous, this court determines legislative intent from the ordinary meaning of the language used. . .. We construe the statute so that no word is left void, superfluous, or insignificant, and we give meaning and effect to every word in the statute, if possible. . .. However, we will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. It is axiomatic that this court strives to reconcile statutory provisions to make them consistent, harmonious, and sensible.

*Hole in the Wall NWA, LLC*, 609 S.W.3d at 13. (internal citations omitted). "If it is possible to construe a statute as constitutional, we must do so." *Steffy v. City of Fort Smith*, 545 S.W.3d 804, 808 (Ark. App. 2018) (citing *Reinert v. State*, 71 S.W.3d 52, 54 (Ark. 2002)).

Under the RIC, "rental housing units shall be systematically inspected for code compliance every two (2) years." LR Code 8-581. In addition to systematic inspections, an inspection may be done: 1) at the owner's request; (2) when the City receives a complaint about the condition of the unit and inspection is necessary; (3) when the unit is affected by fire, vandalism, storm, or other natural disaster; or (4) when title to the unit it conveyed or transferred. Little Rock, Ark., Code § Section 8-582 (2017).

Section 8-583 sets out the procedure for inspections. Subsection (a) consists of three sentences. Sentence one states: The owner, tenant, or agent in charge of the unit is responsible for providing access to a building official into areas subject to inspection under the RIC. It references section 8-355 which requires building officials to present proper identification and show up at a reasonable time, 8-357 which limits the building official's duty to safeguarding the health and safety of occupants and the public, and 20-75 which tells the City what to do with a

housing complaint. The second sentence of 8-583 states that a building official may obtain an administrative search warrant to gain access to the rental housing unit. The third sentence states that the goal of the RIC, *i.e.*, compliance with the housing code to ensure health, safety, and welfare of the occupants, is probable cause for issuance of a warrant.

Plaintiff contends that the third sentence of 8-583 allows for a warrantless search of rental units. The Court disagrees. When read in conjunction with other sections, the RIC does not authorize warrantless inspections if consent is withheld by the owner. Consent may be obtained by the building official from the owner or tenant, or the building official must get an administrative warrant. Inclusion of the language that "legislative intent is probable cause" does not eliminate the warrant requirement. Construing this sentence as allowing a warrantless search renders the previous sentence superfluous. *See Davis v. PennyMac Loan Servs., LLC*, 599 S.W.3d 128, 131 (2020) ("We construe statutes so that no word is left void, superfluous, or insignificant, and we give meaning to every word in the statute, if possible.") (citing *Bedell v. Williams*, 386 S.W.3d 493 (2012)). Further, there is no evidence in the record that the Defendants have conducted searches pursuant to the RIC without consent or a warrant. *See* Aff. D. Herndon, ECF No. 47 at p. 120.

Plaintiff fails to consider that the affidavit for the Taylor Street search warrant is based on more than the "legislative finding" stated in section 8-583 of the RIC. In the affidavit, the building official states that the Taylor Street rental unit had not been inspected in the past two (2) years and a complaint had been received regarding the property. *See Camara*, 387 U.S. at 538 ("The passage of a certain period without inspection might of itself be sufficient in a given situation to justify the issuance of warrant."). The RIC expressly provides for inspections under these circumstances. (ECF No. 47 at p. 50).

Plaintiff alleges that the Defendants violate the unconstitutional conditions doctrine when they require rental unit owners to choose between agreeing to an inspection and obtaining a certificate of compliance under the RIC. The unconstitutional conditions doctrine states that "government may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially his interest in freedom of speech." *Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 513 (1996). A "condition cannot be unconstitutional if it could be constitutionally imposed directly." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.,* 547 U.S. 47, 59-60 (2006).  An unconstitutional conditions claim is often brought to challenge a condition on the receipt of government benefits such as government funding or the granting of licenses. *Liberty Initiative Fund v. Thurston,* 2022 WL 1109800, at *5 (E.D. Ark. Apr. 13, 2022).

Plaintiff cites the Court to *Thompson v. City of Oakwood, Ohio*, 307 F. Supp.3d 761 (S.D. Ohio 2018) in support this claim. In *Thompson*, a group of real property owners sued the city for violation of their constitutional rights by the enforcement of a city ordinance requiring all owners of any real estate to obtain a pre-sale inspection of the premises before title to their property could be transferred. Pursuant to the ordinance, an owner who failed to comply with the pre-sale inspection requirement was guilty of a criminal offense. The court found that the ordinance violated the Fourth Amendment by the failure to include a warrant provision and the city violated the unconstitutional conditions doctrine when it presented the plaintiffs with the choice between agreeing to a warrantless inspection and being denied a certificate of occupancy. *Id.* However, *Thompson* is inapplicable here because the RIC includes a warrant provision.

The Court finds that Plaintiff has failed to prove his unconstitutional conditions claim. Defendants did not place the Plaintiff or others similarly situated in the position of choosing

between a warrantless search and a certificate of compliance under the RIC. Plaintiff's Fourth

Amendment right is protected by the warrant provision in the RIC.  Plaintiff does not have a

constitutional right to refuse access to his rental unit when presented with a lawful search

warrant. *Cf. Rozman*, 268 F.3d at 592-593 (court reasoned that the landlord could not violate the

ordinance "unless he refuse[d] to provide access to inspectors in the face of a valid search

warrant."). Plaintiff did not give up a constitutional right by agreeing to provide access to the

rental inspection unit.

  **B.**  **Due Process**

  Plaintiff argues that the RIC violates the Fourteenth Amendment's Due Process Clause

because it does not provide for pre-compliance review before inspections. The Eighth Circuit in

*Metropolitan Omaha POA v. City of Omaha* found that an ordinance authorizing rental

inspections did not violate the Fourth Amendment because it lacked a pre-compliance review

provision. The court reasoned that pre-compliance review is not required "where inspections are

permitted only if there is consent, a warrant, or court order." *Metropolitan*, 991 F.3d at 886.

(noting that "the Supreme Court has emphasized the importance of pre-compliance review before

*warrantless* inspections") (emphasis in original). Therefore, Plaintiff's procedural due process

claim fails.

  It appears that Plaintiff has abandoned his substantive due process claim because it is not

discussed in his briefs. To the extent Plaintiff makes a claim for violation of his right to

substantive due process, the Court finds no evidence that the Defendants used their power under

the RIC in such an arbitrary way that it shocks the conscience. *See Rozman*, 865 F.3d 980

(weekly inspections of plaintiff's rental properties by city police officers which uncovered

multiple health and safety violations and led to revocation of rental license did not rise to the level of arbitrary, oppressive conduct that shocked the conscience.)

### C.     Excessive Fines Clause

Section 8-579 of the RIC provides that a certificate of compliance is required before an owner may rent any rental housing unit. Little Rock, Ark., Code § 8-579(a) (2017). The requirements for issuance and maintenance of a certificate of compliance include that an owner or agent of the owner must maintain a current business license, and that the owner or agent has the authority to consent to and provide access to an administrative search of the unit. *Id.* at § 8-579(b). Failure to comply with the provisions of the section is deemed to constitute an imminent threat to the public health, safety, and welfare of the citizens of Little Rock and may lead to a declaration by the city that the rental housing unit is a public nuisance. *Id.* at § 8-579(d)(1). If a rental housing unit is declared a nuisance by the City, the City can condemn the property, terminate the utilities, or board up the property. *Id.* at § 8-579(d)(2). Section 8-579(e) states that each violation shall be punishable under Section 1-9 of the Code which provides for a fine of up to $1,000 and/or daily fines up to $500 for continuous violations.[6]

Plaintiff alleges that Section 8-579(d) prescribes an excessive fine and is cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Article 2, § 9 of the Arkansas Constitution. "Under the Eighth Amendment, [e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." *Timbs v. Indiana*, 586 U.S. —, 139 S. Ct. 682, 687 (2019). The Eighth Amendment applies to states, and in turn cities, under the Fourteenth Amendment. "Courts typically consider there to be two elements to an Eighth Amendment Excessive Fines Claim: (1) did the government extract

---

[6] As stated, the RIC does not classify violations as misdemeanors. Therefore, violations of the RIC are only subject to fines.

payment for the purpose of punishment, even in part, and (2) was the extraction excessive?"
*Strizheus v. City of Sioux Falls, S.D.*, 664 F. Supp. 3d 937, 957 (D.S.D. 2023) (citing *Wright v. Riveland*, 219 F.3d 905, 915 (9th Cir. 2000)).

Defendants argue that the Eighth Amendment is inapplicable to Section 8-579(d) of the Code because it is not a penalty. Defendants contend that Section 8-579(d) is a nuisance abatement procedure, not a penalty to be weighed by the Eighth Amendment. According to Defendants, the purpose of the nuisance abatement section, 8-579(d), is to abate a public health hazard that poses a direct risk to citizens of the City who rent unsafe properties from landlords. Defendants argue that the actions which may be taken by the City under 8-579(d), including condemnation, are subject to due process procedures. According to Defendants only Section 1-9 of the City Code imposes a penalty, and Plaintiff has not alleged that Section 1-9 violates the Eighth Amendment.

Plaintiff does not respond to this argument, but merely restates the claim that Section 8-579(d) prescribes excessive fines and cruel and unusual punishment because a rental housing unit can be declared a nuisance if a person refuses to consent to a search under the RIC.

The Court finds that Section 8-579(d) describes a nuisance abatement remedy. "The [Excessive Fines] Clause prohibits only the imposition of 'excessive' fines, and a fine that serves purely remedial purposes cannot be considered 'excessive' in any event." *Austin v. United States*, 509 U.S. 602, 622 n.14 (1993). Plaintiff has failed to cite the Court to any case where a city's nuisance abatement provision has been held to violate the Eighth Amendment's excessive fine prohibition. Accordingly, the Court finds that Plaintiff's Eighth Amendment claim must fail.

### D.      Equal Protection

In the Complaint, Plaintiff contends that the RIC violates the Equal Protection Clause because it treats residents of owner-occupied homes differently than owners of rental property. Defendants argue that the Equal Protection claim fails based upon *Berry v. City of Little Rock*, 904 F.Supp. 940 (E.D. Ark. 1995). In *Berry*, the court held that rental property owners were not a suspect class and, therefore, the City of Little Rock only needed to show that the ordinance which provided for systematic inspection of residential properties was rationally related to a legitimate state interest. "The Court will not overturn an [o]rdinance that does not burden a suspect class or a fundamental interest unless the varying treatment of different groups is so unrelated to the achievement of any combination of legitimate purposes the Court can only conclude that the City's actions were irrational." *Id.* at 948.  The court dismissed the Equal Protection claim by finding that the Ordinance was "designed to serve the legitimate purpose of ensuring that rental housing was being maintained in Code compliance in order to protect the health, safety and welfare of the tenants." *Id.* at 948-49.

Applying *Berry*, the Court finds that owners and landlords of rental property are not a suspect class. The Defendants have provided a legitimate, rational basis for the RIC: to "safeguard the stock of decent, safe and sanitary rental housing with the city and to protect the owners, tenants and their invitees by providing for systematic city-wide inspections of rental housing. . .." Little Rock, Ark., § 8-572; ECF No. 47 at p. 11). Plaintiff has failed to prove the RIC violates the Equal Protection Clause.

### E.      Qualified Immunity

Plaintiff has failed to allege a violation of a clearly established constitutional right. Accordingly, qualified immunity is established on the face of the complaint as to Plaintiff's §

16

1983 claims against the Defendant officials in their individual capacities. *See Gordon v. Bd. of Trustees of the Univ. of Arkansas*, 168 F. Supp. 3d 1148, 1158–59 (E.D. Ark. 2016).

  **F.**  **State Law Claims**

  Having dismissed the federal question claims in the case, the Court declines to exercise supplemental jurisdiction over any state law claims.

  **IV. Conclusion**

  Plaintiff's motion for summary judgment (ECF No. 32) is DENIED. Defendants' motions for summary judgment (ECF No. 33, 37) are GRANTED. The Clerk is directed to close the case.

  IT IS SO ORDERED this 14th day of May 2024.

                  _____

                  James M. Moody Jr.
                  United States District Judge